Good morning, Your Honors. May it please the Court, Michael Tanaka appearing on behalf of Mr. Irving. In this case, Mr. Irving was charged with a crime in the State Court. He'd gone through a number of pretrial proceedings at which there was plenty of opportunity to disposition the case. But he was ready for his trial. He was ready to exercise his Sixth Amendment right to a jury and his Fifth Amendment right against self-incrimination. The case went to Master Calendar Court. Everybody announced ready for trial. There were no courtrooms available. They came back the next day. They announced ready again. It got signed out to a trial court. Then what happened there? Mr. Irving did not get his trial in that trial court. He walks into the trial court, and the first thing that happens is that the State trial court judge engages in sort of a threat to Mr. Irving. Sotomayor Well, if we could start first, the notion that the State judge participated in plea negotiations or directly participated in plea bargaining, which in Federal court, trial judges are not explicitly not allowed to do. But there is no such rule in State court, and as a matter of fact, the district court judge noted, and I think he's right, that it is routinely done every day of the week in California State courts that right before trial, the State trial judge engages in explicit plea bargaining directly with the defendant and the defendant's attorney and the district attorney. So that alone, while I suppose it could be a violation of the Constitution, it's quite a prevalent one. So would you agree we have to go beyond that? Katyal I agree wholly. Sotomayor The actual statement that I will give you this sentence if you go to trial and get convicted. Katyal Certainly, there are good reasons not to allow trial judges to engage in plea negotiations, and the Federal courts don't do it. But I am not arguing that is a per se constitutional violation. And so then doesn't the case turn on whether there's a clear enough Supreme Court case that would permit us to compel the conclusion that this is a violation, and therefore, it was objectively unreasonable for the California courts to consider that a violation? Katyal I submit, Your Honor, respectfully that the Supreme Court case that says that's the one that says the Constitution requires that pleas be voluntary, and the way we determine that is to look at the totality of the circumstances. Alito Is that the Brady case? Is that what you're referring to? Katyal Certainly. Alito Brady v. United States. Katyal Brady, Boykin v. Alabama. Alito Okay. Katyal There are a whole number of them. Alito That gives us the general rule that says they have to be knowingly and voluntarily answered. No question about that. But the question I'm asking you is under this incredibly deferential standard of review in AEDPA, don't we need to determine whether there exists a clearly established Supreme Court case addressing this particular form of participation by the trial court as coercive under constitutional principles before we can declare the decision of the California Supreme Court's unreasonable as a matter of AEDPA? Katyal I submit not, Your Honor. I believe that AEDPA does not require that level of specificity. There are certainly numerous Strickland cases where we have the general rule that counsel of the Constitution requires a standard of competence by counsel not to be prejudiced. Now, all types of fact situations meet that, and we don't say, well, you know, it has to be this particular specific fact situation. And as I suggested in my brief, if that were the rule, then certainly if you beat someone with a rubber hose and there's no federal Supreme Court decision that says you can't do that to coerce a guilty plea, then by a parody of reasoning, that wouldn't meet the AEDPA standard. And I submit that. Ginsburg What's your most analogous case to, let's say, a threat that I will give you the maximum if you go to trial no matter what? Katyal Well, Your Honor, Brady itself, there's a footnote in Brady that says if, and it says now there's no, and Brady found no coercion, but there's a footnote that says if, to suggest that there's a, if the trial court had threatened a higher punishment if he'd gone to trial, then not, that might be coercive. Kennedy So that might not have been a holding, because if it were a holding, you'd be in good shape. Katyal If it were a holding, I would probably not be there. Kennedy And as you know, they say not only can't you follow footnotes, but you can't follow dictum. You have to have a holding. Katyal And I submit the holding is clearly that a guilty plea has to be voluntary. Kennedy You know, I sympathize with you, Mr. Katyal. It's still difficult, despite Ms. Laden, to understand just when you have a precedent and when you don't, what, as you say, what level of specificity you need. In the Strickland cases, certainly they have up to now, no, not required that kind of level of specificity. I would not, if I were a great fan of Strickland's, I would not have held out a lot of hope that when they get that case of what level you need in an ineffective assistance case, that they will continue to follow a broader rule than they do in other cases. But they certainly, I mean, it would be hard to find a Supreme Court case these days in which, applying AEDPA, where they say you have met the level of, that there is a clearly controlling Supreme Court holding. Katyal Well, it cannot be the case that Federal Habeas Corpus does not lie to correct remedies of constitutional violations that occur in State court. And if we're going to narrow the universe of cases that merit relief to those that we can say are on all fours with a Supreme Court case, that's going to be a very tiny number of cases. Now, if that's the rule, then I guess I'm out of the ballpark. But that cannot be the rule. Kennedy Well, you don't have to go that far in this case. You know, what kind of a case is there that has a holding on what judicial conduct is board? You have a general proposition about voluntariness. But I think at least you may need, at least this is one way to look at AEDPA, you may at least need a case dealing with judicial interference or judicial coercion. Well, take Ms. Ladin as a perfect example. What did they say? They had a rule in reverse there, where judges couldn't do things. And they said, well, there's no case that says that outsiders, that the audience can't do it, can't interfere with a fair trial. They had a rule, yeah, it has to be a fair trial. And they even had cases about mobs interfering with trial. But they said we've never had a case where just the audience creates an unfair atmosphere. Isn't that really similar to this? Here you have cases where prosecutors create unfair confessions, but you don't have any case where judges do. I submit one can draw a line between outside influences and prosecutors and judges that doesn't. But why do you put prosecutors and judges together? I mean, why isn't there a difference between improper conduct by prosecutors and improper conduct by judges? In each case, there are primary actors in the judicial system. The mob outside or the audience is a peripheral matter and might bear on a fair trial. Well, if we thought EDPA were designed to protect the Constitution instead of state courts, your argument would have a lot of appeal. But if the purpose of EDPA is to restrict constitutional rights and limit the ability of federal courts to protect people whose rights have been violated, then you're probably going to lose. That's a daunting outlook. But there's at least one other small twist on that case in that there is no reason court decision in this case. We don't really know what the state court was thinking, and there's not a lot we can give deference to. But just taking that outside and looking at general principles, there can be no question that this plea was coerced by the trial court. Well, I might agree with you on that, but that doesn't help. You know, the problem that Judge Talman raised is not whether there was a constitutional violation, but does it matter anymore in this country whether there are constitutional violations by the State? Or is the State free to violate the Constitution almost at will under EDPA? I don't think that was my point. I admit that the line is not always clear. But we can assume for purposes of Judge Talman's question that there is a constitutional violation. And certainly it is a matter of clarity and degree. And as you get closer or further away from what is an obvious violation, then you want to give it more deference in terms of applying general rules to different facts situations. But if you have a case like this … It's not a question of whether it's an obvious violation. It's a question of whether the Supreme Court has a holding on the subject. It's a question of whether it's contrary to clearly established laws determined by the Supreme Court. Supreme Court. And, again, that's what level of generality you want to look at. There's certainly clearly established Supreme Court law against coarse guilty pleas. And whether this factual situation falls within that estimate, it does, and it's not even close. How clear was it that he would or would not get the maximum penalty if he went to trial? Were the State's sentencing statutes such that the judge was sort of making more  It was clearly a threat. Why? The judge had discretion in terms of … How much? Well, the judge obviously had discretion to strike the prior. The judge did not have to double the upper term. I think the judge, it was the upper term double that got him to the 6 years. It could have been a midterm double, 4 years. So there was certainly a lot of room to play in that. It was not like a mandatory minimum as you would see in Federal court. The judge had a wide range of discretion. Good morning, Your Honors. May it please the Court. Robert Foster, Deputy Attorney General for the Respondent. Judge Tallman, I think he hit the nail on the head, which is he has to show it's contrary to clearly established Supreme Court authority, and he hasn't done that. To simply say a plea can't be coerced, under that, if his rationale applies, then there's no limit. Anything will fit into that. I think it has to be much more specific. And, indeed, in the briefing we pointed out to you, the ALR article, it says no Federal court has ever reversed under habeas, and I assume that includes the EDPA cases, of course, a plea because of judicial coercion. I also strongly disagree with counsel that there was coercion here. This was a prediction. He says to the defendant, with your record, it would be very easy to max you out. Now, California allows this. It would be very easy. He said it's going to be very easy. It's going to be very easy to justify maxing you out. But then his last statement is, this is what you're going to get. I mean, he tells him this is what he's going to get, and maybe that is what he was going to get. With all due respect, Your Honor, he said that before what I just quoted. It's he says that's what you're going to get because you've been to State prison three times. It's going to be very easy to justify maxing you out. That's it. The excerpt of the record 45. And after that, he says, and you know if you're convicted what you're going to get, 11 years, 8 months. He's giving him that's what the sentence would be given those factors. All right. But this is. Tell him what the sentence is going to be. Well, he's giving him his prediction, Your Honor, because you don't know. He's got a pretty good idea of a prediction. He's going to do it. No, it has to be a prediction, Your Honor, because we don't know if the priors would have been properly proven. If they weren't, the sentence would have been less. Can you walk. Judge Wilken asked Mr. Tanaka. Yes, Your Honor. You know, whether this was a prediction or an interpretation. Could you walk me through how under California law the judge would get to 11 years and 8 months with his background? Yes, Your Honor. He had. It was charged with 10851. He has a prior strike. So it's a three-year term for the 10851 doubled because of the prior strike. That's assuming he gives him the upper term on the 10851. He has a consecutive 16-month term on the receiving stolen property. And he has prison priors, which give him an enhancement of one year for each one. So he has three of those. And that totals 11 years and 8 months. Yes, Your Honor. And how much discretion does the judge have about that sentence? Considerable, Your Honor. He could have picked the middle term on the 10851 and doubled it. He could have struck the one-year priors or found them not true. And he could have given him a concurrent sentence on the stolen property rather than consecutive. Okay. Thank you. Judge Wilken, you are correct that this conduct in Federal court would not be allowed, but it is allowed in State court. And we've cited you, the case is allowed giving an indicated sentence. It seems to me this happens in every plea bargain situation. The defendant has an offer from the prosecution or in this case from the court, and he's always saying to himself or herself, what's my maximum exposure? What's going to happen to me if I don't take this offer? Well, there's a difference between the maximum. The judge didn't say this is your maximum exposure. This is, he said, this is going to be your sentence. Well. If you don't plead guilty, I'm going to send you to jail for 11 years and 8 months. But you have to put his remarks against the California context, Your Honor, that all of these things have to be proven. If the jury didn't. Well, he said if you're convicted. Yeah. No, he was saying if they're proven. Well, he says if you go to trial and lose. So he's giving him the forecast of what will happen if the jury convicts. Well, he's not going to get the sentence if he's acquitted. I think everybody knew that. Absolutely, Your Honor. That's inherent in the situation. So he's saying to him, if you take it now, it's 6 years. Maybe the judge would have liked to have given him the sentence just because he made him go to trial. Whatever the outcome. I don't think so at all, because the court says to him, you decide what you want, and go take time to talk to your counsel. Go take time to talk to your family. He doesn't, he gives him the statement in the morning. It isn't until 2.30 in the afternoon. The significant amount of time and counsel's presence, the ability to consult with counsel. And you'll notice at the time of the entry of the plea, counsel doesn't object. Counsel doesn't say, Your Honor, I think what you did was wrong. You're pressuring my client. This case had dragged on for months. Help me with this then. What, 6 years is what, the best deal that he could have hoped for then, given the statutory provisions? What could the judge have done? If he were convicted, what would be the lowest sentence? Yeah, that's what I'm trying to ask. Thank you. I believe it would have been, well, theoretically, it could have been 2 years. Because you could have, no, I'm taking that back. It would have been 4 years, Your Honor. You take the midterm of the 10-8-51. You could have taken the lower term. You could have given him the lower term of the 10-8-51. He could have struck the strikes. He could have dismissed the stolen property. He could have given consecutive on the receiving. So he could have been, I suppose, as low as 16 months. 16 months is the low term of the 10-8-51? I believe so, Your Honor, because he could have granted a motion to dismiss the prior strikes, made the receiving concurrent. So I believe that would be the lowest term possible. And the striking of the strikes is a matter of discretion for the court. Yes. The court doesn't have to say this was no good. For some reason, he can just, in his discretion. That's what California calls a Romero motion, Your Honor. Yes, Your Honor. So, but I think that Justice Coleman's point is still there. This is not contrary to clearly established Supreme Court authority. And that's the flaw in Appellant's argument. I think the second flaw, as I've been trying to articulate to you, is that this wasn't coercive, given the totality of the circumstances. He had months to think about this. He was trying to put things off, I assume trying to convert state prison time into local custody. Because you notice this had dragged on for a long period of time. I think it's simply a situation which is inherent in any plea bargain, which is if you plead today, you get six years. If you go to trial and you're convicted and everything, you're looking at as much as 16 years. You've got to decide. Do we have any indication of the strength of the prosecution's case? Possible defenses he might have had, anything like that? We don't have anything to possible defenses. The magistrate judge pointed out that the testimony at the prelim, the officer, one of the officers didn't see his face as he drove by, but under the circumstances where he steals the truck, they catch him having fled from the truck, and the co-perpetrator identifies him, I think was a strong case. So I think we get back to the point that Judge Solomon made, which is it is not contrary to clearly established authority, and the California Supreme Court properly denied the Habeas Petition when it came in front of it. They made a determination, implied factual, that this was not coercive, and I think that that decision was correct and not contrary to clearly established Supreme Court authority. Unless the Court has other questions we would submit. I have one last pitch on AEDPA. Okay. And Macha wrote a Supreme Court case that said, a guilty plea if induced by promises or threats which deprive it of the character of voluntary act is void. Such a conviction is open to collateral attack. Does that involve a prosecutor? No, it did not. Who made the threats in that case, or the promises? It was the prosecutor made a promise in that case. And just last week. But it's certainly okay for a prosecutor to threaten heavier charges in order to induce a plea, right? You can threaten the death penalty if the guy won't plead to life in prison without parole, and that's not coercive. That's correct, but I'm not. Certainly what the judge did here. But it gets back to Judge Reinhardt's question, which is is there a difference between the threat being made by the prosecutor versus a judicial officer? And then we're back to the question of whether there's a Supreme Court case out there that says it makes a difference. Certainly it would seem as a matter of common sense that a threat made by a judicial officer is much more coercive than one made by a prosecutor. No question about that. But your footnote 8 in Brady is a problem for me. I mean, it basically says it's an open question. We do not here make reference to the situation where the judge. They suggest that if that were before them, they would have. But the point being that ---- It may well be, at least at that time, that had that been before them, they would have said that about a threat by a judicial officer. It may even be that today, maybe. The second part of my picture, Your Honor, was this. This Court said in 2005 that Supreme Court precedent includes not only bright-line rules it establishes, but also the legal principles and standards flowing from it. I submit that that ---- this case falls squarely within that. Thank you, counsel. Thank you both very much. All right. It's a good argument.
judges: Reinhardt, Tallman, Wilken